UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

In re:
    LISA F. GILBERT,                  Case No. 07-62176
                                              Chapter 7
            Debtor.                        Honorable Walter Shapero
_____/

## OPINION DENYING MOTION TO DISMISS

The U.S. Trustee has moved to dismiss under 707(b)(3) alleging that under the totality of circumstances, the Debtor is not needy in that she has an ability to repay debts out of future earnings, thereby demonstrating an abusive filing.

This Court has decided any number of 707(b)(3) cases. This one, almost uniquely, grounds the alleged ability to repay debts on the facts that the mortgage costs of Debtor (and her husband's and family's) residence are extremely high by most measures and if their housing costs were less, the difference could be utilized to pay their creditors, in a chapter 13 case for instance. The applicable law in this Circuit directs the Court to examine the integrity and honesty of a debtor and a debtor's neediness for bankruptcy, by reviewing, among other things a variety of non-exclusive factors. Some factors favor the movant's position, but they are of much less importance and weight than the central issue here, and, they pose merely a method of getting at the underlying inquiry as to whether or not we are dealing with an honest but needy Debtor who is not seeking to abuse the system. But for the housing costs involved, the Count first concludes Debtors would not meet the ability to pay criterion in that their joint expenses, (when considered with their joint income, as is appropriate in cases where the debtor is only the one spouse), are such as would not fairly produce the kind of belt tightening that might provide sufficient additional income to afford a reasonable

1

basis for an abuse finding. The Debtor and her non-filing spouse have been married some 17 years, and have two children ages 13 and 15. Their combined average monthly income set forth on line 16 of Schedule I is $7,514, of which Debtor's is $1,327. Debtor works in a retail optical store and her spouse is a mortgage sales representative. Their residence is valued by them at about $368,000, and is subject to a first mortgage with a balance of some $445,000, and a second with a balance of some $60,000. That residence, located in what many consider a good school district, which they are loathe to leave, was purchased some five years ago for about $372,000. The second mortgage, a home equity loan, was taken out in 2006 to finance home improvements and current expenses. Their youngest child was in private school until their financial situation required that he attend public school starting last year. Their Schedule F debts consist entirely of credit card and medical expense obligations totaling $67,000. The bankruptcy filing was primarily apparently precipitated by lawsuits brought by two credit card creditors with whom they were unable to negotiate some payment arrangement. They appear to be relatively up to date on their mortgage indebtedness, which is in the vicinity of some $4,000 per month. Debtor drives a 2003 Honda Accord vehicle and her husband apparently owns a vehicle that is being paid for by his employer, through whom there is some health insurance coverage. In this situation, essentially the only way this Debtor can meaningfully fund a chapter 13 plan is to surrender the house (and in the process likely saddle the Debtor with materially increased unsecured debt arising from a deficiency liability) and seek to obtain housing at a sufficiently net lower ongoing cost as would provide the ability to fund a meaningful chapter 13 plan with whatever the difference may be. This raises questions of what might that lower housing cost turn out to be? Or, should the Debtor be required to seek to purchase a materially smaller or less expensive home, or, if not, be required to rent rather than purchase; and,

2

07-62176-wsd    Doc 34    Filed 07/10/08    Entered 07/11/08 07:48:45    Page 2 of 4

if so, what would be the economic and other costs of doing so (and without even considering what Debtor's husband's income as a mortgage broker or sales person in these particular times might end up being). Should the Debtors access to bankruptcy and their lives for the next several years depend on essentially what at best is essentially speculation as what the answers to those questions might be and whether or not the process of doing so would in the end be better or worse for Debtor's creditors?

Properly viewed in their totality the circumstances and predicament this Debtor and her family find themselves in, and, causing them to seek to avail themselves of the chapter 7 bankruptcy process are simply not ones that smack of abuse. On the contrary, that may fairly represent in these particular times a situation for which a chapter 7 bankruptcy may be designed or appropriate. This situation is somewhat typical of those where (1) real estate was purchased in a rising market, was mortgaged to a great per cent of its then value, and held with the expectation that a rising market (or a stable one but with a lowering amount owed as payments are made) would accrue to their financial benefit; and (2) where spending at a high or even an arguably imprudent (level without accruing savings or a financial cushion), continued without regard to the vagaries, realities and potential pitfalls that such might bring. Imprudence and wrong headedness and/or a misplaced, overly optimistic view, of the future, do not, however, rise to the level of abuse of the bankruptcy process. Indeed, that process is designed to alleviate such where it can be concluded that despite such, the Debtor was honest, and trying to do what she could, under difficult or stressful economic circumstances, only partially of her own making, and not otherwise neither engaging in a life style that was extravagant or outrageous, nor otherwise seeking to take unfair advantage of creditors or otherwise engaging in might be considered unconscionable or abusive behavior inconsistent with

3

the purposes of bankruptcy. Belt tightening by way of being able to reduce or eliminate some disbursements or expenses in a way that is doable, reasonably estimated, and without any material effect on the total outstanding debt to be repaid is one thing.  Requiring a debtor to in effect give up the family residence acquired, financed and held so far under the circumstances of this case, as the price to be paid for being in a Chapter 7 bankruptcy (as is the purport and practical effect of the Trustee's position) is, to this Court, quite another.  The Debtor in this case may yet lose her home or on further thought in the light of prudent financial planning and a realistic appraisal of her situation, willingly give it up.  The failure to do so now, however, does not constitute an abuse of the bankruptcy process.  To grant the Motion in this case would in large measure make an abuse finding more a numbers game or a mechanistic evaluation, than a search for, or a recognition of, an honest but needy debtor - such as the Court finds the Debtor to be in this case.

The Trustee's Motion is therefore denied.  That said, Debtor is well advised to carefully and prudently review her and her family's financial circumstances and potential on a realistic basis, and to the extent possible minimize the likelihood that the circumstances they are in will not be repeated, exacerbated, or continue, lest, if there is a next time, a Court would not see the situation the same way it does now.

An Order is being entered.


**Signed on July 10, 2008**

                                              **/s/ Walter Shapero**
                                          **Walter Shapero**
                                          **United States Bankruptcy Judge**